May it please the court, my name is Diana Samuelson. I'm the attorney for Freddy Fuiyaba. And I guess the first question I have is whether the court is entertaining rendering this appeal moot because of the apparent difficulty in finding... Well, what do we do when there's no reviewable record? We have no order. But you shouldn't hold it against the intervener. If you dismiss this case as moot, then where are we? In his attempt to gain access to these... But you say it's moot because there is no order preventing you from getting what you want. Wouldn't that... Well, the district court has already implicitly ruled that there is such an order and he's not... But we get the last guess. We have the last guess. Okay, if you say that... If we say that the record shows us there's no order and nobody can produce an order, then there's no order. So you do what you want to do without an order. If the court would hold that the defendant's attorney, for example, county counsel, who may still have all of his discovery in his files, if the court holds that he can't put up this phantom protective order and prevent me from access, I'm happy to have the court dismiss this appeal as moot. We can't tell you about... Who do you tell me about the defendant? The county, you mean? Well, the county is the defendant. The sheriff's department, the county are the defendants in the Thomas case. I represent Mr. Friaba, who's on death row at the moment, litigating his capital habeas. Then you're left with trying to convince the California courts they should give you more than they've been willing to give you so far. Well, right now we don't have an order to show cause from the Supreme Court. The discovery that we've been able to get so far is under penal code of 1054.9, which is a very narrow discovery tool that applies only in capital cases. If they issue an order to show cause, then we get an evidentiary hearing, then we get discovery, then I can broaden my request, but I've been limited by the statute, the state statute.  The only question before us is, are you being stopped by a federal protective order? Yes. Is that stopping you? As far as anybody has shown us, there is no such animal. So it can't prevent you from... So I can go to the county council, the attorney for the defendants, who may be the only place where these documents still exist, and I can say, I'm requesting that you furnish me with X, Y, and Z. And they will not say, no, sorry, Judge Hatter issued his protective order and... Well, we'll hear from them and find out in just a minute. But I would suppose if somebody finds it, then it can be re-litigated at a later time. But right now it appears that there is no such thing. You say the case is moot. Judge Hatter, go vacate whatever you did. Okay. Wouldn't that accomplish what you need to accomplish? If you order Judge Hatter to vacate his order, yes, and explicitly told that there's no such order, then that will... If the case becomes moot on appeal, that's what very typically we do. We vacate the order of the district court to vacate its order. Okay. I'm just concerned that something else will come up, and I'll be starting again from scratch. I'll start with the California Supreme Court. Because I don't think it's been a good decision. It's already been four years I've been trying to get these documents. And although we're still waiting for the California Supreme Court to rule to set oral argument on the appeal and to rule on the habeas... That's not our problem. That's not your problem. We have enough problems without having the California court's problems. So I'll reserve my remaining time for... Thank you. Good morning, Your Honor. Good morning. I'm more than happy to answer the questions that... Can I get your name for the record? Pardon me? Your name for the record. Oh, I'm sorry, Your Honor. Raymond J. Flinn is counsel for the Sheriff's Department. Thank you, Mr. Flinn. Well, here's my own concern. Let's assume that there were an order or disposition of the sort that Judge Silverman has alluded to that says there is no such order, no party has produced a copy of it, therefore the district court must be vacated, its ruling must be vacated. My concern is what happens if suddenly, aha, you were going to seek to, you know, you find a copy of it. What happens? What happens down the road? Well, there are a number of answers to that question, Your Honor. First of all, I did seek, you have to understand, I'm sure the court understands, the underlying Thomas case is approximately 20 years old. I've called as many people. One of the defense counsels is now a sitting judge in the Supreme Court. I called him to try to de-scratch his memory of this protective order. I actually spoke to two other defense attorneys. One recalls a protective order, one does not. We're not challenging your good faith or your diligence. The point is right now as we sit here, there is no protective order. And so what I'm concerned about is that somehow your client will continue to act as if there were one when none has been produced to this court. Which goes to the second part of my response, Your Honor. The county of Los Angeles, through the sheriff's department, is obligated under state law. And I understand the immunities don't apply in federal court. I've litigated many civil rights cases in the federal district court. The fact that 832.5 and .7 of the penal code doesn't apply in federal court doesn't mean that the county is free to waive the privileges of 120 deputies. So that's what we're talking about. That's true, Your Honor. Nothing to do with whether there's a federal protective order. Except, Your Honor, that when you're asking for, let's say, personnel records, law enforcement records, you still are entitled, yes, you may be entitled on discovery to get those records. On the defense side, let's say for the county, the county is obligated to then seek a protective order. Well, you can do that ab initio. I mean, you can start over. Exactly. And that's what I'm trying to get to, Your Honor. But right now, as it appears in our file, there is no protective order. That is the way the record is set up right now, Your Honor. You're absolutely correct. And I couldn't find one. You're right. There's no protective order. However, what I'm trying to say in terms of the question. You can try to get another one is what you're saying. Exactly. Exactly. From the state court judge. From the state court judge, even federal court, Your Honor. allows us, that's the only type of out the county has in raising these privileges. Where the courts have held, look, you're absolutely correct. Maybe on balance, the litigant is entitled to this information. You, as counsel or the county representing the sheriff's department, given the privacy of these records, you're entitled to ask for a protective order. Do I understand correctly the state judge has already ruled that some of this stuff about Deputy Blair is discoverable? And that has been turned over, Your Honor. And additionally, there were two other deputies where records were sought. And the court said no. It went in camera. We're talking about an in-camera review. And said yes for records in respect to Deputy Blair, who was the deputy who was killed, and no as to the two other deputies. So Deputy Blair has already been furnished to them? Yes. So what are we fighting about now exactly? Well, what we're fighting about now, Your Honor, is all the discovery that was conducted in the underlying civil rights case of Thomas v. County of Los Angeles, involving 120 deputies. And what is being sought are all the responses to the derogatories, request for remissions, request for production. Any and all personnel records have been turned over in that litigation. I thought the state court judge just ruled only that the Deputy Blair stuff was the only thing that. That is correct, Your Honor. That's my impression of what they wanted to get. Well, I believe that's been turned over, but I will also note for the court, Your Honor, given the age of the case, some of these records may not exist for a number of reasons. Number one, they've been purged. That's a different story. Wait a minute. Wait a minute. If I understand it, we are in agreement at this point that there is no extant protective order, correct? At this point, yes, Your Honor. Well, let's say there has not been a protective order, correct? And what you're arguing to is you may want to go in and try to ask the judge at this date to now impose a protective order. Am I right? I am obligated to do that, Your Honor, yes. I'm not asking what you're obligated to do. That's what you intend to do. Yes, Your Honor. Is that correct? Yes, correct. But as we sit here today, you're agreeing there is no extant protective order today. That I couldn't find, Your Honor. Well, what do you mean by that? Because the case is – You can't find it. We don't have it in the district court record. I assume everybody's tried the district court record. That is correct, Your Honor. Don't have it in the files. So if we rule there is no extant protective order, that's the end of it, isn't it? There is not, then, a protective order, correct? In legal contemplation. We could not, Your Honor – this is my problem. I understand your problem. I'm trying to get a – I'm trying to see how you're going to try to slip out of it. That's what your folks are worried about over here, your opponent. And the thing is, if there is no protective order, and we're going to rule that, because now is your time to – now is your time – here we are in the case. Now is your time to say there's a protective order. You know, there's this thing, what is it called? Stare decisive? I know, Your Honor. Case is finished. Things are over. So we're going to rule that there is no protective order. Now, personally, I don't think any of us care whether you go to the district court, the California Supreme Court, the Superior Court, and try to get yourself some kind of protective order. We don't care. All we're talking about is, is there a protective order now, which the district court purportedly would not let them intervene to get through. But there isn't one to get through. The end. Is that not true? That is correct, Your Honor. The question that was asked is, what will I do next? That's what Plaintiff's Counsel was asking me. What's being concerned isn't what you're going to do next. The question is whether you're going to try to reach back and say, ah-ha, there is a protective order. There was one, after all. And we're trying to make – I think what I'm trying to make clear, I think what my colleague is trying to make clear, when we rule, there ain't no protective order in legal contemplation, just like lots of other things in legal contemplation. They may be fictions, but there is no such thing as a protective order. The end. It doesn't stop you from doing anything you want in the future, except there is not a protective order, and there will not be a protective order from the past. Understood, Your Honor. That's understood? Yes. You're not fighting that, I take it? No, Your Honor. I couldn't produce it, so I know, as a trial attorney, if I don't have the evidence to present to you, I could find it later on, but it's too late. And I understand that. We're all in agreement on that, then. Okay. I want to make sure I'm clear on something. Everything that the state judge ordered that you turn over has been turned over? Yes, Your Honor. Do I understand that correctly? Yes, Your Honor. And understanding that we were asked to produce documents that no longer exist, and we told that to the court, as a consequence, the court said, well, you can only produce what you have. So what we have has been turned over, Your Honor, in the state court. Thank you, Mr. Quintus. No further questions. Thank you, Your Honor. Ms. Samuelson, back to you. I'd like to clarify my opposing counsel's last representation. It's not correct that all of the Blair incident reports have been turned over. When the trial court listed the 20 or so incident reports that were discoverable, the sheriff's department came in and said, oh, sorry, everything's been purged. We don't have anything anymore. Fortunately, and I asked the judge if somebody in one of the attorneys on the plaintiffs or defendants could find these incident reports because they came through the attorneys. They were part of the discovery process. So plaintiff's attorneys found eight of the 20 incident reports, presented them to the judge in camera, and then he released them to us. So there's still 12 out there that we haven't been able to find. And now, according to the sheriff's department, they no longer exist, so we can't get them through the sheriff's department. But my hope, and why I'm spending so much time on this, is that the county counsel who was the attorney for the sheriffs, when the sheriffs responded to the discovery, they copied it, I'm hoping, kept a copy in archives somewhere, and then I can now, since there's no protective order, go to them and say, please produce these incident reports that Judge Perry in the state court has ordered to be produced. Is there anything that Judge Perry ordered produced that was not produced on the strength of the protective order? Now, if they say it's disappeared, it's lost, it's burned, you know, that's a different story. But is there anything that you asked Judge Perry to order be turned over that hasn't been turned over because they say we can't do it because of the protective order? It's been implicit throughout this whole case, but no, not specifically. When Judge Perry ordered the sheriff, you know, as the agency that has these records, they are part of the prosecution team because they assisted the prosecution in my case. Okay, but they're saying this is what we still have and the other stuff is lost in space. Well, they're not saying anything. They're saying we don't have anything. And then through plaintiffs, the Thomas Plaintiff's counsel They're not saying, aha, we can't give it to you because of a federal protective order. Right. No, they are not saying that. My concern, though, is when I go to county counsel or the other defendants' lawyers who may have this discovery put away somewhere, they're going to say, well, we still have the protective order. We can't give it to you. Judge Fernandez is giving you the answer to that one. Well, that's wonderful. Thank you. I hope that that, you know, is going to work for me. It's all we can do. Yes. It's all we can do. It's all this Court can do. Okay. It's all we're saying to you. Yes, I understand. What other courts do, what other people say, what other arguments are made, they're going to be made, but we can't affect that. All we can do is rule. Here's a chance to show there's a protective order. Yeah. And I think that, I mean, the burden is really on the defendants. They're the ones hiding behind this protective order to produce it. I don't think the plaintiffs or the intervener was, you know, required to dig around and present this protective order. But that's irrelevant at this point. My final comment is that one of Furiaba's claims on habeas is that the state, the prosecutor, withheld potentially exculpatory evidence that would go to guilt or punishment. Now, we have the Thomas case full of information about the Linwood Sheriff's Department. The Linwood Sheriff's Department are the people that my client was worried about that night of the shooting. And my claim, one of my claims to the Supreme Court, the California Supreme Court, is that they were under an obligation, the Sheriff's Department was under an obligation to produce, under Brady, the incident reports on Blair, any other relevant information that would establish a pattern and practice of misconduct by the Linwood Sheriffs on the community, including my client at that time. So if, well, it's probably irrelevant at this point. This is not a, yes, I'm making the argument for the next court. So I will submit it. Thank you very much. Thank you. Thank you, Ms. Samson. Mr. Fuentes, thank you. The case is argued as submitted.
judges: Fernandez, Silverman, Graber